IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

BETTY FOREMAN,                          )
                                        )
            Plaintiff,                  )      C.A. No. K17C-01-009 JJC
                                        )      In and for Kent County
      v.                                )
                                        )
TWO FARMS, INC., and MOORES             )
LAKE SHOPPING CENTER, LLC,              )
                                        )
            Defendants.                 )

## MEMORANDUM OPINION & ORDER

*Upon Plaintiff's Motion for an Adverse Inference Instruction*
**Granted**
*Upon Defendants Motion in Limine to Preclude References*
*to Missing Surveillance Video*
**Denied**
*Upon Defendants Motion in Limine to*
*Preclude Plaintiff's Photograph*
**Deferred**
*Upon Defendants Motion in Limine to Preclude the use of*
*NOAA Weather Records at Trial*
**Denied**

Submitted: August 14, 2018
Decided: October 4, 2018

Michael P. Minuti, Esquire and Timothy A. Dillon, Esquire, McCann & Wall, LLC, Wilmington, Delaware, Attorneys for Plaintiff.

Michael J. Logullo, Esquire, Rawle & Henderson, LLP, Wilmington, Delaware, and Jeffrey L. Oster, Esquire, Rawle & Henderson, LLP, Philadelphia, Pennsylvania, Attorneys for Defendants.

**Clark, J.**

On February 28, 2015, Betty Foreman (hereinafter "Ms. Foreman") slipped and fell on a sidewalk at a Royal Farms convenience store owned and operated by Two Farms, Inc., and Moores Lake Shopping Center, LLC (hereinafter collectively "Royal Farms"). Ms. Foreman sues Royal Farms, claiming that it permitted snow and ice to remain on the sidewalk for an extended period of time which in turn caused her fall. She also claims that Royal Farms failed to warn her of the allegedly dangerous conditions.

Ms. Foreman seeks an adverse inference jury instruction at trial because Royal Farms did not retain a surveillance video showing her fall and the sidewalk's condition. Royal Farms claims that an adverse inference instruction would be inappropriate because there is no evidence that it intentionally or recklessly destroyed the evidence. Additionally, Royal Farms asserts that Ms. Foreman's fall was not captured by the video because the camera angle was obstructed. According to Royal Farms, the lost recording is therefore immaterial and irrelevant.

Royal Farms also filed three *motions in limine*: (1) to preclude references to the missing surveillance video; (2) to preclude photographs that Ms. Foreman allegedly took of the area of her fall on the day of the incident, or in the alternative, to also permit an adverse inference instruction because some of Ms. Foreman's photographs were allegedly deleted; and (3) to preclude weather record evidence that Ms. Foreman seeks to introduce at trial.

For the reasons that follow, Ms. Foreman's motion seeking a spoliation instruction is **GRANTED**. Royal Farms' motions *in limine* to preclude references to the missing surveillance video and to preclude evidence of weather records are **DENIED**. Finally, Royal Farms' motion to preclude Ms. Forman's cell phone picture of the scene, or in the alternative to require a spoliation instruction regarding pictures Ms. Foreman allegedly deleted from her cell phone, is **DEFERRED** until trial.

2

## I.    Factual Background

Ms. Foreman slipped and fell at a Dover Royal Farms on February 28, 2015. A few days after Ms. Foreman's fall, Michelle Russo (hereinafter Ms. Russo), a claims administrator for Royal Farms risk management department, viewed the video and the incident report. Ms. Russo testified in her deposition that she did not recall seeing Ms. Foreman fall on the video when she reviewed it because a pillar and a Red Box machine allegedly obstructed the camera's view. After watching the surveillance video, Ms. Russo downloaded it and saved it on a CD and then placed the CD in a box. That CD was the only copy made of the surveillance video from the day of Ms. Foreman's fall.

The incident report completed shortly after the incident confirms that a CD of the incident was "burned" and that "the incident range was located in the DVR." Ms. Foreman's counsel sent a certified letter to Royal Farms on April 13, 2015, notifying Royal Farms of Ms. Foreman's personal injury claims. That letter also requested that it preserve all evidence, including specifically video surveillance footage, from the date of Ms. Foreman's fall. Namely, the evidence preservation letter provided:

> [p]lease accept this letter as formal notice of claim. ... Please take all the necessary steps to preserve all written documents, e-mails, and physical evidence regarding Ms. Foreman's fall, including but not limited to, video surveillance; incident reports; inspection logs and reports; statements; safety materials used, such as salt, sand or calcium; and any and all pictures of the scene.

After receiving the notice of claim and evidence preservation letter, Royal Farms acknowledged its receipt on May 14, 2015. The sole disc containing the video footage was either lost or destroyed sometime in June 2015.[1]

---

[1]  Royal Farms' counsel represented at oral argument that the video has been missing since June 2015.

On May 24, 2018, Defense counsel informed Ms. Foreman's counsel that the video surveillance footage no longer existed. Then, on May 31, 2018, Ms. Foreman's counsel deposed Ms. Russo. During her deposition, she testified that the video surveillance evidence had simply "disappeared." She testified that the box containing the CD was placed on the top shelf in a storage room and that box, and at least seven other boxes, disappeared during a renovation of the office in the months afterwards. Ms. Russo could not give a specific date for when the boxes disappeared. She testified that when she investigated what happened to the CD, no one told her that they had intentionally destroyed it.

One of Royal Farms' motions *in limine* addresses alleged evidence tampering by Ms. Foreman. Namely, Ms. Foreman produced a single photograph allegedly showing the conditions of the area where she fell on the day she fell. She testified in her deposition that either she or someone on the scene used her cell phone to take multiple pictures of the site. Upon Royal Farms' request, Ms. Foreman produced metadata that evidences the file containing the picture was created on March 26, 2015. Weather record data indicates that temperatures in Dover on March 26, 2015 ranged from between forty and sixty-seven degrees.

## II.    The Surveillance Video

Ms. Foreman initially filed a motion seeking default judgment as a sanction for Royal Farms' loss of the surveillance video. In the alternative, she sought a spoliation instruction because it was destroyed. At oral argument, Ms. Foreman converted her motion to one requesting only the adverse inference instruction. Ms. Foreman alleges that Royal Farms intentionally or recklessly destroyed this allegedly highly relevant evidence. In response, Royal Farms has denied all wrongdoing. Royal Farms maintains that the loss of the video was accidental and that there is no evidence that they intentionally or recklessly destroyed it or failed to

4

preserve it. On its own part, Royal Farms filed a motion *in limine* to preclude any references to the missing surveillance video at trial.

The Delaware Supreme Court set forth Delaware's standard for an adverse inference jury instruction in *Sears, Roebuck & Co. v. Midcap*[2] as follows:

> [a]n adverse inference instruction is appropriate where a litigant intentionally or recklessly destroys evidence, when it knows that the item in question is relevant to a legal dispute or it was otherwise under a legal duty to preserve the item. Before giving such an instruction, a trial judge must, therefore, make a preliminary finding that the evidence shows such intentional or reckless conduct.[3]

The Superior Court has applied the *Sears* standard using two prongs. First, the Court must make a finding of intentional or reckless conduct.[4] Second, the Court must determine whether the evidence was destroyed while the litigant knew that it was relevant to a legal dispute or otherwise under a legal duty to preserve the evidence.[5] Other Delaware courts have also applied the standard in this manner.[6]

Applying the first prong of the test, the Court must make a preliminary finding pursuant to Delaware Rule of Evidence 104(a) (hereinafter "Rule 104(a)"), regarding whether by a preponderance of the evidence, Royal Farms' destruction or loss of the video was intentional or reckless. To act intentionally merely means to act "with purpose."[7] The Court finds that the record before it does not establish that Royal Farms, through its agents, intentionally lost or destroyed the surveillance video. As is often the case, the only evidence of what happened to the video comes

---

[2] *Sears, Roebuck & Co. v. Midcap*, 893 A.2d 542 (Del. 2006).
[3] *Id.* at 552.
[4] *Lesh v. ev3, Inc.*, 2013 WL 3155761, at *2 (Del. Super. Apr. 16, 2013).
[5] *Id.*
[6] *See, e.g., Beard Research, Inc. v. Kates*, 981 A.2d 1175 (Del. Ch. 2009) (Court of Chancery employing a similar two prong method); *see also M.C. v. Dep't of Serv. for Children, Youth & Their Families*, 2011 WL 1707250, at *23 (Del. Fam. Mar. 24, 2011) (Family Court also interpreting the Sears standard to have two prongs).
[7] *Beard*, 981 A.2d at 1191, *citing Sears*, 893 A.2d at 550.

from a Royal Farms employee – in this case a risk management employee. In her deposition, Ms. Russo expressed concern and confusion regarding the disappearance of the surveillance video. She also testified that she searched vigorously for it once she realized it was missing. Given her testimony and the lack of other evidence, the Court does not conclude based on the record before it that Royal Farms intentionally destroyed this evidence in order to deprive Ms. Foreman of its use.

Recklessness, on the other hand, falls somewhere between intentional conduct and negligent conduct.[8] The Delaware Supreme Court has defined recklessness in a civil context as a "conscious indifference to the rights of others."[9] Recklessness in a civil case has a very high burden, "because the precise harm which eventuated must have been reasonably apparent, but consciously ignored in the formulation of the judgment."[10] Delaware courts have specifically defined "reckless in the spoliation context as a conscious awareness of the risk that one's action or inaction may cause evidence to be despoiled."[11]

Here, the record is sufficiently developed for the Court to make the required findings regarding Ms. Foreman's request for this instruction. First, the Court preliminarily finds that Royal Farms acted recklessly by failing to preserve the surveillance video. It is reasonable to conclude that Royal Farms consciously ignored that their actions or inactions would lead to the spoliation or disappearance of the evidence. At the outset, awareness of risk is heightened when a party is on notice of a claim. Although knowledge by a litigant that evidence is relevant to a legal dispute is the second inquiry discussed in *Sears*, the degree of knowledge of the evidence's importance must also be considered in assessing whether a party's

---

[8] *Id.*
[9] *Id., citing Jardel v. Hughes,* 523 A.2d 518, 529 (Del. 1987).
[10] *Id.* at 1192, citing *Jardel,* 523 A.2d at 531.
[11] *TR Inv., LLC v. Genger,* 2009 WL 4696062, at *17 (Del. Ch. Dec. 9, 2009).

6

conduct was reckless. Here, nothing in the record indicates that Royal Farms took any meaningful steps to preserve the evidence, despite the high degree of notice regarding the evidence's importance. Namely, a reference in the incident report and an evidence preservation letter made Royal Farms acutely aware of the risks involved in not preserving this evidence.

Despite the aforementioned awareness, Royal Farms transferred its surveillance video to a single physical disc and placed it in a storage box. It made no other copies of the video and did not save the video on a hard drive. The storage box containing the only copy of the surveillance video was placed on a shelf in a storage room while the office was undergoing renovations. Employees and non-employees alike had unfettered access to the storage room holding the sole copy of the surveillance video. Given the ease with which digital copies can be stored, both physically and non-physically, electing to rely on a single copy of the surveillance video saved on a CD, left unattended for weeks on a shelf in a room while office renovations were underway, constitutes conduct that a reasonable jury could find to be reckless.

Under the second prong of the *Sears* test, the Court must determine whether Royal Farms knew the evidence was relevant to a legal dispute or the litigant was otherwise under a legal duty to preserve the evidence. An adverse inference is appropriate when an actor is "under a duty to preserve evidence and takes part in the destruction of evidence while being consciously aware of a risk that he or she will cause or *allow evidence* to be spoiled by action *or inaction* and that risk would be deemed substantial and unjustifiable by a reasonable person."[12] Delaware courts have found that "[a] party in litigation or a party who has reason to anticipate litigation has an affirmative duty to preserve evidence that might be relevant to the

---

[12] *Beard*, 981 A.2d at 1192 (emphasis added).

issues in the lawsuit."[13] This affirmative duty to preserve evidence "attaches upon the discovery of facts and circumstances that would lead to the conclusion that litigation is imminent or should otherwise be expected."[14] A party has no duty to "preserve every shred" of evidence, but rather must "preserve what it knows, or reasonably should know, is relevant in the action."[15]

The Court finds that Royal Farms knew that the surveillance video would be relevant to a legal dispute. First, as Ms. Russo testified, their initial incident report was created in March 2015, a few days after Ms. Foreman's fall on February 28, 2015, and it references the surveillance video. Then on April 13, 2015, Ms. Foreman's counsel sent Royal Farms a certified evidence preservation letter requesting that the surveillance video be preserved. Royal Farms knew it had a duty to preserve the video from at least March 2015 when it created its incident report that acknowledged that the video captured the "incident range." It then lost or destroyed the video in June 2015, at least a month after it received the preservation letter. The Court therefore infers from the evidence that Royal Farms "recklessly failed to fulfill [their] duty to preserve that potential evidence,"[16] making, (1) evidence that Royal Farms did not preserve the video admissible, and (2) an adverse inference jury instruction proper.

Royal Farms further argues that the surveillance video is not relevant because Ms. Foreman's fall was not visible on the video. Ms. Russo testified during her deposition testimony that she watched the video and that a pillar and a Red Box

---

[13] *TR*, 2009 WL 4696062, at *17.

[14] *Triton Constr. Co., Inc. v. Eastern Shore Elec. Serv., Inc.*, 2009 WL 1387115, at *8 (Del. Ch. May 18, 2009).

[15] *TR*, 2009 WL 4696062, at *17.

[16] *Triton*, 2009 WL 1387115, at *8 (defendant showed no evidence that he took steps to physically preserve a thumb drive or home computer with evidence and effectively "threw up his hands in bewilderment" as to what happened to them when he was unable to produce them at trial).

8

machine obscured where Ms. Foreman fell. The incident report also corroborates that the fall was not visible on the video. However, even if the surveillance video did not show Ms. Foreman's fall, the Court finds that matters within that camera angle were relevant. Namely, the video would have shown the weather conditions at the time of the fall as well as the general conditions of Royal Farms' premises. Ms. Foreman allegedly snapped a cell phone photograph of the conditions but Royal Farms contests the authenticity of that photograph. The video would have either corroborated the authenticity of Ms. Foreman's picture or refuted it. Furthermore, the video would reasonably be expected to show whether other Royal Farms customers had trouble walking on the premises because of the allegedly icy conditions. Finally, the video would show the potential existence or lack of existence of alternative routes of ingress or egress. In this regard, Royal Farms places alternative paths of ingress at issue in alleging Ms. Forman's comparative negligence in choosing the entrance where she fell.

Many of the facts emphasized by Royal Farms in their argument against a spoliation instruction are properly considered by the jury. The pattern spoliation instruction recognizes that *the jury ultimately must conclude that Royal Farms conduct was reckless*. Furthermore, if the jury makes that finding, then the adverse inference is permissible, not mandatory. The jury will be free to consider Royal Farms' evidence supporting its claim that it accidentally lost the video. As a consequence of this decision, Royal Farms' motion to exclude references at trial to the video surveillance footage must be denied.

### III.    Royal Farms' Motion *in limine* to Preclude Ms. Foreman's Photograph

Royal Farms filed a motion *in limine* to exclude photographs that Ms. Foreman allegedly took of the accident scene shortly after her fall. Alternatively, Royal Farms requests that an adverse jury instruction be administered because Royal

9

Farms alleges that Ms. Foreman did not preserve all of the pictures taken by her phone.

In this regard, Royal Farms claims that the metadata regarding the pictures presented by Ms. Foreman evidences that the remaining picture was not created until March 26, 2015, a month after her fall. Ms. Foreman counters that the metadata's date reference is likely the date the picture was downloaded from her phone to a computer. Ms. Foreman also emphasizes that government weather data establishes that the weather on March 26, 2015 reached sixty-seven degrees. She argues that the picture at issue showing ice and snow is inconsistent with a day having a high temperature of sixty-seven degrees.

In contrast to the surveillance video issue, the record regarding Ms. Foreman's cell phone photographs is not sufficiently developed for the Court to make a preliminary finding regarding whether Ms. Foreman acted intentionally or recklessly in deleting or losing photographs. Nor is the record sufficient for the Court to make a preliminary finding regarding the existence or nature of any such photographs. Finally, the record is also not sufficient for the Court to determine the authenticity or genuineness of the photograph that Ms. Foreman proffers. Accordingly, the Court will defer its decision regarding the admissibility of that photograph and also the propriety of a spoliation instruction regarding deleted cell phone photographs until a Rule 104(a) hearing to be held before trial. That hearing, outside the presence of the jury, will take place on the first morning of trial prior to opening statements so the parties may adjust their presentations accordingly.

## IV. Royal Farms' Motion *in limine* to Preclude Weather Records

Royal Farms seek to preclude Ms. Foreman from entering into evidence records from the National Oceanic & Atmospheric Administration (hereinafter "NOAA") arguing they are not relevant and are otherwise inadmissible pursuant to Delaware Rules of Evidence 403 (hereinafter "D.R.E. 403"). Ms. Foreman counters

10

that the records are relevant, easy to understand, and would not confuse a jury. Ms. Foreman requests that the Court admit these records into evidence.

First, the Court finds that the records are highly probative of a material issue. Namely, the records show that while no snow fell on February 28, 2015, the day of the incident, snow had fallen in Dover on February 26, 2015. Furthermore, they show that two inches of snow were visible on the ground in Dover at 4 p.m. the day before the incident. Given the records' indication that the low on the night of February 27, 2015 was 14 degrees Fahrenheit, the records make it more probable that snow remained on the ground at 8:30 a.m. the next morning when Ms. Foreman fell. When balancing the high degree of probativeness of this evidence against what the Court finds to be very minimal risks of confusing the jury, the Court finds that the relevance of the records is not substantially outweighed by any D.R.E. 403 concerns.

## V. Conclusion

For the reasons discussed, Ms. Foreman's motion for an adverse inference instruction is **GRANTED.** It follows directly that Royal Farms' motion to preclude evidence of the missing video is **DENIED.** Furthermore, Royal Farms' motion *in limine* to preclude Ms. Foreman's photograph from introduction or reference at trial, or alternatively for an adverse inference instruction is **DEFERRED** until a Rule 104(a) hearing outside the presence of the jury before trial. Finally, Royal Farms' motion *in limine* to preclude the use of the NOAA weather records at trial is **DENIED**

**IT IS SO ORDERED**.

/s/ Jeffrey J Clark

JJC/dsc
*Via File & ServeXpress*
oc:     Prothonotary

11